272 P.2d 163

**NASNER   v.   BURTON et al.**

No. 8032.

Supreme Court of Utah.

June 23, 1954.

McKay, Burton, McMillan & Richards, Wm. T. Thurman, Salt Lake City, for appellant.

E. G. Linsley, San Francisco, Cal., Scott M. Matheson, Salt Lake City, for respondent.

WORTHEN, Justice.

Appeal from a judgment for plaintiff, entered upon a verdict in his favor, awarding damages for breach of contract.

The trial court denied defendants' motions for a directed verdict and for judgment notwithstanding the verdict or in the alternative for a new trial.

Defendants assign as error the court's rulings on their motions.

█ This being a law case, and plaintiff having prevailed, he is entitled to the benefit of the evidence in the light most favorable to him, together with every inference and intendment fairly and reasonably arising therefrom.[1]

These facts are established without dispute: Plaintiff, at the time this action was commenced, was the owner of a street and store front decorating business. In advance of holidays, conventions and celebrations, plaintiff solicited cities, towns and business houses and contracted to furnish and hang flags, pennants and banners above the streets, and decorations, on store fronts appropriate for the occasion.

After preliminary negotiations, the parties about the 15th of June, 1951, entered into an agreement under which plaintiff agreed to sell and defendants agreed to buy plaintiff's business, including stock and good will, for $3,300 in cash, to be paid on a future date.

As to the facts touching a breach by defendants, the evidence is in sharp conflict.

Defendants testified that payment was not to be made until plaintiff furnished an inventory of the stock and a bill of sale. Plaintiff testified that payment was to be made when he returned from Elko, Nevada, and that he informed defendants he would return to receive the money and turn over the business on June 25; that he returned from Elko about June 24, and on June 25 called defendants' place of business and talked with defendant Rulon Burton, and told him that he, plaintiff, was in town. That Rulon Burton told plaintiff that his father and partner, F. G. Burton, was not in but he would let him know. That he waited all day, but defendants did not call him, and the next day he returned to Elko, where he had a job to finish and collections to make. That he made a special trip from Elko for the sole purpose of closing the deal and getting his money.

Plaintiff further testified that he returned to Salt Lake City about July 3. That defendants didn't get in touch with him. That shortly thereafter plaintiff learned that defendants were soliciting business in the name "F. G. Burton Co., successor to

1. Toomer's Estate v. Union Pac. R. Co., Utah, 239 P.2d 163; McCollum v. Clothier, Utah, 241 P.2d 468.

C. A. Nasner & Co." That he called defendants' place of business and talked with Rulon Burton and said, "Apparently you don't mean business. I have waited all this time and I have not heard from you;" that defendant said, "We have not been able to raise the cash yet."

Defendant Rulon Burton denied that plaintiff talked with him on or about June 25. That the first time he heard from plaintiff was about July 7. That plaintiff then called on the phone and said, "Are you fellows going through with this deal or aren't you?" Defendant testified that he answered, "Of course we are going through with the deal. I will give you father's number right now, and you can call him so he can get hold of Mr. Cochran and come right out."

Defendant F. G. Burton testified that he had no contact with plaintiff between June 15 and about July 10. That he called plaintiff about July 10 and told plaintiff that they would like an appointment the following day, "To come out and conclude the transaction." That plaintiff said to him, "You waited a long time to come out, but come out and talk to us and we will further discuss it."

The trial court instructed the jury in its instruction No. 12 as follows:

"Before you can find for the plaintiff, you must be satisfied by a preponderance of all of the evidence in the case that each and both of the following propositions are true:

"*Proposition No. 1.*

"Defendants defaulted in the payment to the plaintiff when the payment was due.

"*Proposition No. 2.*

"The default of the defendants, if any, existed for an unreasonable length of time before the plaintiff rescinded the contract.

"If you find both of the above propositions to be true, you are instructed to find for plaintiff and against the defendants, and assess damages under the instructions herein."

The court instructed the jury in its instruction No. 16 as follows:

"If you find for the plaintiff, his damages will be ascertained as follows:

"Deduct the market value of the business on the date of the recission from $3,300. The remainder is the award due the plaintiff. If the market value is equal to, or greater than $3,300, then the plaintiff is entitled to only $1. as nominal damages. * * *"

■ Did the defendants breach the contract? A fact question was presented which the jury resolved against defendants. That finding we cannot disturb.

We are therefore of the opinion that the trial court properly declined to grant defendants' motion for a directed verdict.

Nor was defendant entitled to judgment notwithstanding the verdict. The jury having found that defendants breached the contract, plaintiff was entitled to nominal damages which would have been denied had that motion been granted.

In view of our conclusions herein, defendants' motion for a new trial was properly denied.[2]

We are of the opinion, however, that the evidence establishes as a matter of law that plaintiff sustained only nominal damages.

Plaintiff admitted that defendants F. G. Burton and Hubert Cochran called at his home in the early part of July, 1951; under cross-examination, he testified:

"Q. Did you have a discussion there with these gentlemen? A. Why, yes.

"Q. And will you tell us the substance of that conversation? A. Well they said then that *they had the money.*

"Q. How much? A. Well they did not specify the amount, but they said they had the money. They may have said $3,300. I don't remember that, but they said they had the money to do business, so I told them, I said, 'You put me on a kind of a spot. I have waited all this time, and I was supposed to get the money on the 25th, and I haven't heard anything from you since, and I have had Mr. James Mull working with me. When I got back to Elko I told him that I hadn't got the money, the deal wasn't closed.' 'Well' he said, 'if you don't sell to them, why I will take—I would like to get a chance to make an offer to take the business. I think I can raise the cash.' and he offered me $4,000.

"Q. Cash? A. No, he was going to realize the cash.

"Q. I don't understand that. He was going to pay you $4,000 cash? A. Yes, he offered me $4,000 and said he thought he could raise the cash, raise the money.

"Q. So he would pay $4,000 in cash to you? A. I don't know whether it was—not said in exactly cash, but he said he would work with me until he could realize the cash.

"Q. You told these gentlemen that? A. Yes."

Plaintiff further testified:

"Q. Now on the occasion when they met out at your place, and they offered you the $3,300, and said they had the money, you turned them down; is that correct? A. Well, I had this promise pending.

"Q. And you felt it would be more to your advantage, of course, to make the $4,000 deal than the $3,300; is that right, *so you told these gentlemen you would not sell to them for $3,300; is*

2. Ternes v. Duhn, 7 Utah 497, 27 P. 692.

*that correct?* A. I guess that is the way it is, yes."

Plaintiff further testified:

"Q. Well, a moment ago you testified that you were still willing to accept the $3,300 on that day. You wouldn't have accepted it had they tendered it, would you? A. Well I guess I would; I don't know.

"Q. So that, actually, you did not consider the contract at an end? A. I would not have accepted $3,300, I would have accepted $4,000." (Italics ours.)

Plaintiff further testified that the market value of his business was the same on June 25 as it was on June 15.

■ It is generally recognized that on the breach of a sale contract by a buyer, the seller must minimize or keep down his damages so far as it is reasonably within his power to do so.[3]

■ Plaintiff refused to accept from defendants the full price agreed to be paid. Any loss plaintiff sustained resulted not from defendants' breach, but because plaintiff held out for more than defendants had undertaken to pay.

Plaintiff, however, was entitled to nominal damages.

■ "An unexcused failure to perform a contract is a legal wrong. Action will lie for the breach although it causes no injury. Nominal damages are then awarded. * * * Even though a breach of contract benefits a plaintiff, he can, nevertheless, recover nominal damages; but a judgment for the defendant will not be reversed merely to give the plaintiff nominal damages unless some substantial right of the latter will thereby be protected."[4]

We have examined the other points raised by the defendants but find them without merit.

The judgment is reversed and remanded to the district court with instructions to enter judgment for plaintiff for $1 nominal damages. Defendants to recover their costs on appeal.

McDONOUGH, C. J., and CROCKETT, HENRIOD and WADE, JJ., concur.

3. 46 Am.Jur. 769; 25 C.J.S., Damages, § 33, pages 499–502; Jankele v. Texas Co., 88 Utah 325, 54 P.2d 425.

4. 5 Williston on Contracts (Rev.Ed.) Sec. 1339A, p. 3766. See also 1 Sutherland, Damages (4th Ed.) Sec. 10, p. 35 and p. 40; Restatement of the Law of Contracts, Vol. 1, Sec. 328, p. 502.