479 P.2d 477

**John Michael KRYGER and William Frederick Stewart, Plaintiffs and Appellants,**

**v.**

**John W. TURNER, Warden, Utah State Prison, Defendant and Respondent.**

**No. 12073.**

Supreme Court of Utah.

Jan. 12, 1971.

Ronald N. Boyce, Salt Lake City, for plaintiffs-appellants.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, Harry E. McCoy, Asst. Attys. Gen., Salt Lake City, for defendant-respondent.

CALLISTER, Chief Justice:

Plaintiffs appeal from a denial of their petition for a writ of habeas corpus. They assert that their pleas of guilty in June of 1968 to the crime of robbery were not their voluntary and intelligent acts but were induced by illegally obtained evidence.

Plaintiffs contend that the State, during the investigation of the crime, acted in the following illegal manner:

1. The State extracted an illegal confession from Kryger; he testified that at the time of his arrest, he was interrogated without being warned of his constitutional rights and that he confessed after being threatened that if he didn't, he would serve time, "a lot of time."

2. The State conducted an illegal lineup; Kryger testified that he was stopped in his automobile, shortly after the commission of the crime, and the police had him stand on the curb, while another vehicle circled past him. The police then advised him that he had been identified as the robber, and he was taken to the police station. He contends that this procedure was illegal because he did not have an attorney present, and he was not informed that he was entitled to an attorney while he was being held for identification on the curb.

3. The State conducted an illegal search; plaintiffs concluded that the knife, apparently used in the robbery, was recovered from their apartment by means of an unlawful search and seizure. Kryger testified that he confessed that he and Stewart committed the robbery and that the weapon used in perpetrating the crime, a knife, was hidden in the closet of their apartment. Kryger stated that he had never consented to a search of the apartment nor had he been shown a search warrant. Stewart testified that the police came to the apartment and arrested him and searched the apartment, but they didn't find the knife and they departed, taking him to the police station. Stewart denies that he consented to the search, and he was not shown a warrant. The knife was introduced into evidence at the preliminary hearing; so plaintiffs concluded the knife was procured by an unlawful search and seizure, since there was no consent, no warrant, and the police had not seized it as an incident to Stewart's arrest.

Plaintiffs vigorously urge that they did not realize that the foregoing evidence was procured by means that proscribe constitutional safeguards; and, therefore, they pleaded guilty. They assert that under these circumstances, their plea was not knowingly and voluntarily made, and their conviction cannot be sustained.

At the time plaintiffs pleaded guilty, defense counsel interrogated them; they responded that no one, including anyone in defense counsel's office, the prosecution, or the police, had given any promise or done anything to coerce their plea of guilty and that they were entering their plea of guilty solely because they were guilty of the crime as charged. Immediately thereafter, they both pleaded guilty.

At the hearing on the instant petition, Stewart testified that he first met defense counsel at a lineup in which Stewart participated. The same counsel represented them at the preliminary hearing, where the knife was introduced into evidence, and the victim, a Mr. Finch, identified Kryger. Stewart testified that he believed Kryger's confession was offered as evidence. Stewart stated that counsel advised him that the case didn't look good, the prosecution had the weapon, a confession, and an identification at a lineup attended by an attorney. Stewart testified that the evidence introduced at the preliminary hearing influenced him to plead guilty.

Plaintiff Kryger testified:

Q. Would you tell the Court whether this evidence, the identification, the presence of the knife, the other things, the statement that you made, induced to any extent your plea?

. A. No sir.

Q. What was your reason for pleading?

A. We just thought we'd just get out there and do our time because they said it would be until about December and we didn't want to wait around in the County jail for about eight months.

Q. Did you believe there was no other alternative than to plead guilty in view of this evidence?

A. No, sir.

Kryger further admitted that he had indicated to his defense counsel that he had been identified, that the police had the weapon, and that he had discussed the charges against him with the interrogating officer, including the alleged threat to confess or he'd get more time. Kryger claimed that defense counsel had advised him that the confession was validly obtained. Both plaintiffs testified that counsel failed to ask them if the police had advised them of their constitutional rights.

At the conclusion of the hearing, the trial court denied plaintiffs' petition. Both plaintiffs and defendant cite McMann v. Richardson [1] to support their respective positions; the court therein determined whether and to what extent an otherwise valid guilty plea may be im-

1. 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970).

peached in collateral proceedings by assertions or proof that the plea was motivated by a prior coerced confession.

The court initially observed:

A conviction after a plea of guilty normally rests on the defendant's own admission in open court that he committed the acts with which he is charged. [Citations omitted] That admission may not be compelled, and since the plea is also a waiver of trial—and unless the applicable law otherwise provides, a waiver of the right to contest the admissibility of any evidence the State might have offered against the defendant—it must be an intelligent act "done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, at 748, 90 S.Ct. 1463, at 1469, 25 L.Ed.2d at 747.[2]

The court stated that the validity of a plea is determined by whether the plea was a voluntary and intelligent act of the defendant.[3] The court observed that the defendant who pleads guilty is in a different posture than one who is convicted after a trial in which the coerced confession is introduced. In the former situation, he is convicted on his counseled admission in open court that he committed the crime charged against him. The prior confession is not the basis for the judgment, has never been offered in evidence at a trial, and may never be offered in evidence. The court concluded that a defendant is bound by his plea and his conviction unless he can allege and prove serious derelictions on the part of counsel sufficient to show that his plea was not, after all, a knowing and intelligent act.[4]

Plaintiffs contend that their unchallenged assertions are sufficient to invoke the exception cited in McMann, namely, that their counsel's advice was not within the range of competence demanded of attorneys in a criminal case.

In McMann, the court proffered the following significant comments:

* * * His [defendant's] later petition for collateral relief asserting that a *coerced* confession induced his plea is at most a claim that the admissibility of his confession was mistakenly assessed and that since he was erroneously advised, either under the then applicable law or under the law later announced, his plea was an unintelligent and voidable act. The Constitution, however, does not render pleas of guilty so vulnerable.

* * * the decision to plead guilty before the evidence is in frequently involves the making of difficult judg-

2. At p. 1446 of 90 S.Ct.
3. At p. 1449 of 90 S.Ct.

4. P. 1450 of 90 S.Ct.

ments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. * * * Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.

\* \* \* \* \* \*

In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the grounds that counsel may have misjudged the admissibility of the defendant's confession. * * *[5]

In Alires v. Turner,[6] this court stated that the right of an accused to have counsel is not satisfied by a sham or pretense of an appearance in the record by an attorney who manifests no real concern about the interests of the accused. The accused is entitled to the assistance of a a competent member of the Bar, who demonstrates a willingness to identify himself with the interests of the defendant and who will assert such defenses as are available to him under the law and consistent with the ethics of the profession. The failure of such representation constitutes a departure from due process of law.

In the instant action, there is no allegation that counsel's representation was a sham or a pretense, but merely an assertion that in retrospect counsel misapprehended the facts allegedly related by the plaintiffs and that he failed to interrogate the plaintiffs in regard to certain particulars. Defense counsel actively participated through all the critical stages of the proceedings and admittedly conferred with plaintiffs as to many of the significant facts. Defense counsel is a member of the Bar, and a man of fine reputation with years of legal experience. A review of the record does not reveal any basis for this court to determine that plaintiffs' pleas were invalid because of the alleged serious derelictions of defense counsel.

The judgment of the trial court is affirmed.

TUCKETT, HENRIOD, ELLETT and CROCKETT, JJ., concur.

5. P. 1448 of 90 S.Ct.

6. 22 Utah 2d 118, 121, 449 P.2d 241 (1969)