439 P.2d 279

Kenneth STAGMEYER, Plaintiff and Appellant,

v.

LEATHAM BROTHERS, INC., a corporation, Defendant and Respondent.

No. 10991.

Supreme Court of Utah.

March 25, 1968.

Wallace R. Lauchnor, of Bayle, Hurd & Lauchnor, Salt Lake City, for appellant.

Jay E. Jensen, of Christensen & Jensen, Salt Lake City, for respondent.

## CROCKETT, Chief Justice:

This suit involves the plaintiff's complaint and the defendant's counterclaim for damages caused when the defendant's large truck-trailer collided with a similar unit of the plaintiff which had been stopped on U. S. Highway 191 about 18 miles north of West Yellowstone, Montana, because of ice and snow conditions on the night of January 25, 1965.

A jury trial resulted in no cause of action verdicts, both on plaintiff's complaint and defendant's counterclaim. Plaintiff appeals, seeking to reverse the judgment and obtain a new trial on the ground that the court erred in admitting certain opinion evidence of a truck driver and a police officer relating to the operation of the plaintiff's truck and the happening of the accident.

The incident occurred on the segment of U. S. 191 within Yellowstone Park. The plaintiff's truck-trailer unit carrying fresh produce was traveling northward; and the then defendant's unit carrying a load of salt was going the same direction, apparently some considerable distance behind. There was snow on the highway, snowbanks alongside, and it was foggy. It was about 3:00 or 4:00 a. m. when the plaintiff's truck ran into an area of ice and slush caused by water coming onto the highway from an overflowing stream. When the slush splashed on his windshield the below-zero temperature froze it immediately and obscured the driver's vision so he had to stop. He got out and onto the truck's hood to clear the windshield, leaving all of the lights on the truck-trailer still burning. While he was doing this he heard the noise of the defendant's truck coming, got down and ran to the rear to give warning, but as he did not have a flashlight, this was ineffectual. When the defendant's truck driver encountered the same conditions, before he could bring his heavier load to a halt, collided with the plaintiff's stopped truck. The impact carried both of these large units about 100 feet northerly and left them both jack-knifed across the highway.[1]

Appellant's first assignment of error relates to the questioning of Gary L. Hallett, formerly employed by the defendant, who had been the relief driver on the defendant's truck on the occasion in question.

---

1. That we review facts favorable to jury's verdict, see Nasner v. Burton, 2 Utah 2d 236, 272 P.2d 163.

After testifying to observations he made at the scene, and having affirmed that he was experienced and acquainted with the standard practices of drivers of such equipment, defendant's counsel asked him this question:

Q. * * * Do you have an opinion based on your experience as a truck driver as to what the common practice would be with respect to any warning signs or lights that would be effected by such a truck driver?

An objection was raised to the witness giving his opinion, which the court sustained, and stated as follows:

The Court: Now, what difference is it going to make what the common practice is? We have got to know what a reasonable prudent practice—what a reasonable, careful, prudent truck driver would do. I don't know what the common practice is. * * * What is the standard practice for a reasonably prudent truck driver under those conditions?

Defendant's counsel did not pursue this questioning. After the witness was cross-examined by plaintiff's counsel, the court then stated:

The Court: I'm going to ask this witness a few questions in regard to the problem that you raised, Mr. Jensen. Mr. Hallett, * * * can you remember this hypothetical question given to you by Mr. Jensen * * *?

A. Yes.

The Court: All right. Now consider those circumstances again. Do you have an opinion in regard as to what the reasonably prudent truck driver in the industry of driving heavy-duty trucks would do under the circumstances? * * *

* * * * * * *

Mr. Lauchnor: May I have the same objection?

The Court: You may have your objection, and it will be overruled.

* * * * * *

The Court: No. I want to know what the reasonably prudent truck driver would do, *not what you would do,* in your opinion.

A. Well, I believe they would turn on their four-way flashers first, which all your bigger trucks are equipped with, and then get your flares out, or your fuses, whichever the case may be, and get them far enough down the road so that any on-coming traffic may have a little bit of warning that there is something wrong.

The Court: All right.

Mr. Jensen: Now, may I proceed, Your Honor?

The Court: Yes, I simply was protecting my own record there.

Appellant states its position thus:

The trial court, in essence, asked the witness, as an expert, to pass on the actions of the Stagmeyer driver and tell

the jury whether or not in his opinion the driver was in fact negligent. Such testimony elicited by the Court and with such emphasis, could only have indicated to the jurors that the Court felt the witness was amply qualified to pass upon the negligence of the Stagmeyer driver. The subsequent testimony from the expert clearly shows that he considered the Stagmeyer driver to have been negligent in failing to put out flares or warning lights. This question had the effect of letting him pass judgment on the ultimate fact which it was the jury's prerogative to determine. Such testimony was highly prejudicial and is reversible error.

█ We appreciate the fact that the questioning of the witness Hallett about which the plaintiff assigns as error gives semblance of having the faults about which the plaintiff complains, and that his argument is therefore not without some plausibility. However, such matters should not be looked at in isolation, but in the total perspective of the case to determine whether the testimony was competent and whether there was prejudicial error. Where the question relates to something not within the knowledge generally possessed by lay-men, and the information will help the jury better understand the situation and aid them in solving the problem they confront, it is permissible to ask one properly qualified as an expert therein to give his opinion.[2] If it is otherwise competent and admissible, the fact that it bears directly upon the ultimate fact the jury must determine does not make it any less so.[3] And the trial judge should be allowed some latitude of discretion both as to the necessity of such testimony and the qualifications of the witness to give it.

█ It will be noted that the questioning criticized by the plaintiff really boils down to the fact that the trial judge changed the question so that it seems to single out one truck driver (not necessarily plaintiff's) rather than asking as to the custom of truck drivers generally in this somewhat specialized occupation. The difference in approach resulted more in changing the form of questioning than the substance of the testimony elicited. It seems apparent that the same answer would have come from asking what was the general custom and practice among truck drivers driving these heavy truck-trailers.[4] Viewing the whole matter in perspective, we do not believe that any prejudice resulted to the plaintiff.

2. See Hooper v. General Motors Corp., 123 Utah 515, 260 P.2d 549, and Webb v. Olin Mathieson Chemical Corp., 9 Utah 2d 275, 342 P.2d 1094, 80 A.L.R.2d 476.

3. See Joseph v. W. H. Groves Latter Day Saints Hospital, 7 Utah 2d 39, 318 P.2d 330.

4. That the common practice or custom is competent, see 38 Am.Jur. 680, also 77 A.L.R.2d 1327.

■■ The other ruling on evidence charged as error was in allowing a highway patrolman to give his opinion, based on the position of the vehicles after the accident, as to the point of impact and their positions when it occurred. The first observation on this point is that the plaintiff has not met the requirement that in order to complain of the admission of evidence, there must be a clear and definite objection stating the grounds therefor.[5]

The statement made by counsel in connection with his objection was that "there is insufficient foundation to show what he is asking the officer. He hasn't asked the officer if he knows where the vehicles were sitting—which direction the vehicles came from * * * if he will clarify what he means by the angle of impact, *perhaps I wouldn't have any objection*." After a clarifying question and a response by the officer indicating that he understood the question, he was permitted to answer without a renewal of, or further objection. From the context the trial court was justified in assuming that the objection had been met.

■ Supplementing the above, and more important than the status of the objection, is the fact that we do not see any likelihood that the officer's testimony concerning the positions of the vehicles and the point of impact had any substantial bearing on the outcome of this trial. In that regard this case is different from Day v. Lorenzo Smith & Son Inc.[6] recently decided by us. There the fixing of the point of impact on the basis of debris and marks on the highway as being over the center line had a critical bearing on the question of the defendant's negligence, whereas here, although the testimony given was relevant to the general picture of what occurred, it was obvious that there was neither any basis for any such precise determination, nor was it of such critical importance.

■ This case impresses us as one of the class of cases where there were some occurrences during the trial somewhat short of the desideratum, but nothing of sufficient gravity either singly or cumulatively to warrant a reversal. It is necessary to take into consideration and make some allowance for human frailties and variances in joints of view. It would be strange indeed if the drama of such a collision in the night could be reproduced a year later by witnesses in a courtroom without some untoward things occurring during the trial which might be criticized; and particularly by a party who conscientiously believes that a jury went wrong in not awarding him damages. However, from our point of

5. White v. Newman, 10 Utah 2d 62, 348 P.2d 343 (1960); Child v. Child, 8 Utah 2d 261, 332 P.2d 981 (1958); State v. Amundsen, 37 Wash.2d 356, 223 P.2d 1067, 21 A.L.R.2d 1082; 5 Am.Jur.2d 37, Appeal and Error, sec. 553.

6. 17 Utah 2d 221, 408 P.2d 186.

view, which it is our endeavor to maintain as impartially as possible in the middle, it seems likely that the jury may well have thought that the real blame lay with the weather conditions: the snow, the overflowing water, the ice and slush, and the subzero temperatures; and that there was not sufficient proof of fault to justify imposing liability on either party. In our opinion there is an entirely reasonable basis in the evidence to support that conclusion. (All emphasis added.)

Affirmed. Costs to defendant (respondent).

CALLISTER, TUCKETT and ELLETT, JJ., concur.

HENRIOD, J., concurs in the result.