449 P.2d 241

**Chalo ALIRES, Plaintiff and Appellant,**

v.

**John W. TURNER, Warden, Utah State Prison, Defendant and Respondent.**

**No. 11207.**

Supreme Court of Utah.

Jan. 3, 1969.

Ronald N. Boyce, Salt Lake County Bar Legal Services, Inc., Salt Lake City, for plaintiff and appellant.

Phil L. Hansen, Atty. Gen., LeRoy S. Axland, Asst. Atty. Gen., Salt Lake City, for defendant and respondent.

CROCKETT, Chief Justice:

Chalo Alires petitioned in habeas corpus to vacate the judgment and sentence he is serving in the State Prison which was imposed upon him pursuant to his plea of guilty to a charge of second-degree burglary. From adverse judgment of the Third District Court he appeals.

Petitioner's contention is that his right of counsel was not properly safeguarded.

The charge against petitioner arose out of a nighttime forcible entry by him and two companions into a beer tavern in Tooele. At the time of their arraignment in the District Court, in response to the defendant's request for counsel, the judge appointed Mr. Morris D. Young, an attorney who happened to be in the courtroom at the time, to represent the three defendants. After a brief conference with Mr. Young in the court chambers, all three defendants entered pleas of guilty. The cases were referred to the Probation Department for investigation, and sentence was deferred pending its outcome.

About a month later, after report had been made, at the time set for sentencing, it appears that Mr. Young again happened to be in court. When the case was called, the judge asked him if he represented the defendants, he answered,

"I don't recall, your Honor, I guess I do."

In response to the usual further questions by the court: before sentence, whether he had anything to say as to why sentence should not be pronounced, and after sentencing, why the sentence should not be carried out, Mr. Young made simple and terse responses in the negative.

Petitioner's argument is that this representation by Mr. Young was merely perfunctory appearance for the record and that he thus in effect had no counsel at all. In view of this direct attack upon the representation by Mr. Young, we regard it as unfortunate, as did the trial court, that he did not attend the hearing on the instant

petition. It was stipulated that if called to testify he would not remember the facts about his representation of the petitioner. Concerning this the trial court remarked:

This is a good illustration of why on these cases, just because another attorney is involved, you shouldn't excuse him from coming to these hearings when his testimony might be relevant. * * * and I think it's bad policy for you to stipulate on something like this and excuse the attorney or anybody else, from appearing in court simply as an accommodation to him because it's inconvenient for him to do so.

As opposed to what amounts to practically a hiatus as to what was done by counsel in petitioner's behalf, petitioner proffered this evidence: that he understood Mr. Young to promise that he would "come and visit you guys and we will see if we can get probation for you"; that petitioner's wife had given the attorney $100. (From the record it seems uncertain whether this was for attorney's fees, or to pay for a bond. Perhaps the parties were not sure either.) Nevertheless, petitioner states that the attorney did not come to see them; that the next time he saw the attorney was at the time sentence was imposed. In regard to what occurred at the time of sentencing, the petitioner testified:

I asked him [Mr. Young] I says— when he got up and stated, "I don't recall these young men," I said, "Mr. Young, I gave you $100, me and my wife did and you signed it on a receipt," and he just shook his head, "I don't recall it" and turned and walked away.

█ The further question necessary to confront is this: Is there a basis for believing that a better representation by counsel would have been of some advantage to petitioner? This is so because it is the policy of our law, established both by statute and decision, that we do not reverse for mere error or irregularity, but only where it is substantial and prejudicial. That is, not unless the error is of sufficient importance that it might have had some effect upon the result.[1] On this point, petitioner now projects certain facts, which if they had been made known to a court or a jury, may well have raised a reasonable doubt as to his guilt of the crime of burglary, and/or in any event may have justified a conviction of the misdemeanor.

The facts as claimed by him are: that he and his wife were customers of the tavern and well acquainted with the tavern owner; that it appeared to him that the tavern owner had been manifesting more than strictly business interest in petitioner's wife; that petitioner and his associates,

1. Sec. 77–42–1, U.C.A.1953, provides that error shall not be presumed to result in prejudice, nor justify reversal unless it affects substantial rights; see State v. Neal, 1 Utah 2d 122, 262 P.2d 756; State v. Hines, 6 Utah 2d 126, 307 P.2d 887.

one of whom was his nephew, had been drinking; it was after midnight when this subject came up and they decided to go down to the tavern so petitioner could confront the owner about this personal matter; that they went down and broke into the tavern; that they neither intended nor attempted to steal anything, but were scared away by some shots fired by the owner.

■ We are not here concerned with the credibility of petitioner's story. It might be said that parts of it seem quite incredible, or even foolish. But people sometimes do things which by hindsight seem foolish even to themselves. On the basis of this record, we think the only reasonable conclusion to be drawn therefrom is that if petitioner had had counsel actively interested in protecting his rights, the result may have been more favorable to him.

■ The right of an accused to have counsel as assured by Sec. 12, Art. I, Utah Constitution,[2] and by the VI and XIV Amendments to the U. S. Constitution[3] is one of those rights "rooted in the traditions and conscience of our people" as essential to the protection of individual liberties and therefore included in our concept of due process of law.[4] The requirement is not satisfied by a sham or pretense of an appearance in the record by an attorney who manifests no real concern about the interests of the accused.[5] The entitlement is to the assistance of a competent member of the Bar, who shows a willingness to identify himself with the interests of the defendant and present such defenses as are available to him under the law and consistent with the ethics of the profession.

■ The failure of such representation for the petitioner herein is a departure from due process of law. This has been recognized as one of the exceptions from the rule of finality of judgments, and which may therefore be attacked collaterally under habeas corpus.[6]

The writ is granted. The petitioner's plea of guilty is set aside. The case is remanded for such further proceedings as seem just in the premises. No costs awarded.

CALLISTER, TUCKETT and HENRIOD, JJ., concur.

ELLETT, J., dissents.

---

2. See State v. Farnsworth, 13 Utah 2d 103, 368 P.2d 914; and State v. Hines, footnote 1 above.
3. See Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932); Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
4. Justice Cardozo in Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288.
5. A case closely analogous to the instant one is Fields v. Peyton, 4 Cir., 375 F.2d 624.
6. Ibid; see also Johnson v. Zerbst, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461; Wilson v. Rose, 9 Cir., 366 F.2d 611; and our statement in Bryant v. Turner, 19 Utah 2d 284, 431 P.2d 121.