465 P.2d 343

**Juan JARAMILLO, Plaintiff and Appellant,**

**v.**

**John W. TURNER, Warden, Utah State Prison, Defendant and Respondent.**

**No. 11634.**

Supreme Court of Utah.

Jan. 27, 1970.

---

6. See Kent v. Industrial Comm., 89 Utah 381, 57 P.2d 724.

Juan Jaramillo pro se.

Vernon B. Romney, Atty. Gen., Lauren N. Beasley, David S. Young, Asst. Attys. Gen., Salt Lake City, for defendant and respondent.

ELLETT, Justice.

Mr. Jaramillo, the plaintiff and appellant herein, was defendant in a criminal case wherein he was charged with the crime of robbery. On February 13, 1968, he withdrew his plea of not guilty, entered a plea of guilty, and asked the court to sentence him forthwith. He did not appeal from the judgment and sentence but did on April 2, 1969, petition for a writ of habeas corpus alleging that at the time of his change of plea he was not advised of the consequences of a plea of guilty to the crime with which he was charged.

The trial record reveals that Mr. Jaramillo was interrogated by his counsel and indicated by his answers to questions that he wanted to withdraw the plea of not guilty and enter a plea of guilty to the crime of robbery. The court then interrogated him, and the following is taken from the official transcript of the proceedings:

MR. BARNEY: Your Honor, at this time we would request the right to withdraw the plea of not guilty previously entered and to enter a new plea.

THE COURT: You understand by so doing, Mr. Jaramillo, it means the Court will sentence you to an indeterminate term in the Utah State Prison?

MR. JARAMILLO: Yes.

THE COURT: And you're doing this because you're in fact guilty of this matter, is that correct?

MR. JARAMILLO: Yes.

The trial court dismissed the petition in the habeas corpus matter and denied the writ, whereupon this appeal was taken by the plaintiff herein.

Mr. Jaramillo is attempting to use the writ of habeas corpus as a means of appellate review. This he cannot do.[1] In addition to the claim made in his original petition that he was not advised as to the consequences which would follow if he entered a plea of guilty to the charge, he

1. Brown v. Turner, 21 Utah 2d 96, 440 P.2d 968 (1968).

now attempts to enlarge his claim and asserts that counsel inadequately defended him.

■ Ordinarily an appellant may not raise new issues on appeal which were not presented to the trial court.[2] However, in order to prevent further erosion of the meaning of the Constitution of the United States and to revive the memory of what was originally intended by the Sixth Amendment thereto, we wish to address a few remarks to the new claim of inadequate representation by his lawyer.

To begin with, this is usually but a loophole through which guilty men hope to escape from the debts which they owe to society for past criminal behavior. It is a loophole through which other guilty men have escaped from their just desserts under the law, and it is a loophole through which guilty men will be released to prey upon law-abiding citizenry unless courts look more carefully at the requirements of the Constitution as set forth therein.

The Sixth Amendment to the Constitution of the United States so far as applicable to this matter reads: "In all criminal prosecutions, *the accused shall enjoy the right* to a speedy and public trial, * * and *to have the Assistance of Counsel for his defence.*" (Emphasis added.)

■ The Amendment does not say an accused must have counsel. It simply says he shall have the right to have counsel for his defense. This meaning was the one understood by judges of the great courts of this Nation for a century and a half. The language used in the Amendment is clear and was chosen to make certain that the newly created Federal entity did not follow in the footsteps of the mother country and prevent one accused of a felony from having counsel in court to assist in his defense. In fact, it was not until 1836, some 45 years after the Bill of Rights was adopted, that one accused of felony in England was given the right to have counsel in order to assist him.[3] The Amendment was intended merely as a limitation upon the new Federal Government and was never intended to cause society upon whom the criminal preys to guarantee a lawyer free of charge to make it as difficult as possible to discover who it is that commits the foulest of crimes, and most assuredly it was never thought by anyone at the time of the adoption of the Amendment that the free representation must be by the best lawyer obtainable; and so this claim, now the last refuge of the guilty, that "my lawyer was incompetent" should be carefully looked at.

2. Holman v. Christensen, 73 Utah 389, 274 P. 457 (1929); Burleigh v. Turner, 15 Utah 2d 118, 388 P.2d 412 (1964).

3. 21 Am.Jur.2d Criminal Law Sec. 309.

Before a judge brands a lawyer as being incompetent, he should be assured in his own mind that he can pass the same Bar examination which the lawyer passed before being admitted to practice his profession in the courts of the land. It may be that this self-introspection should only apply to trial judges and to the judges of the appellate courts of the individual states, for there is no constitutional requirement or otherwise that judges of the Supreme Court of the United States be able to pass a Bar examination nor that they be lawyers.

We should not permit a person who admits his guilt to be freed simply because he makes slanderous statements against his lawyer. We know the lawyer whose competence is now questioned by the appellant herein. He has been admitted to practice his profession in the courts of this state after passing an examination to test his knowledge of the law and after offering satisfactory evidence of his integrity and good moral character. He was a trusted member of the Legal Defenders Association, and there is no evidence of any dereliction of duty on his part in regard to the representation and advice given to this appellant or otherwise.

▇▇ It is time to let imprisoned felons know that even under the rules laid down by the Federal Courts, freedom from confessed guilt, voluntarily, knowingly, and intelligently admitted, will not be given by the courts because of alleged incompetence of counsel unless there has been such a flagrant abuse of legal procedure as to amount to bad faith on the part of the lawyer.[4] The Oklahoma case of Yarbrough v. State, 457 P.2d 826 (Okl.Cr. 1969), holds that merely alleging and asserting inadequate representation on the part of counsel is of no avail to a felon. The burden is upon one to show that at the time of trial counsel failed in some manner to represent him which failure resulted in prejudice to his defense.

When courts observe these principles, there will be a lessening of writs filed in the courts of the land and a realization on the part of felons that there is a debt due to society which must be paid before there can be effective rehabilitation, which is the aim of all incarceration.

If this defendant is to be freed from prison, it will have to be done by a system of courts with a philosophy of the law which differs from ours and which differs from that universally held by all judges up until a few years ago. The appeal is without merit. The judgment of the trial court is affirmed.

CROCKETT, C. J., and CALLISTER and TUCKETT, JJ., concur in the result.

HENRIOD, Justice (concurring in the result).

4. Parks v. State, 457 P.2d 818 (Okl.Cr.1969); State v. Hemminger, 457 P.2d 141 (Kans.1969).

I concur in the result in this case but not in that portion of the main opinion having to do with the defendant's attempt to interject the incompetency of counsel for the first time on appeal. This court many times has said that in such a case we will not discuss the point. Anything said about it, therefore, is surplusage and dictum, and is in no sense any authoritative segment of the law of the case.