STATE of Utah, Plaintiff and Respondent,

v.

Henry Carl SMITH, Defendant and Appellant.

No. 16406.

Supreme Court of Utah.

Nov. 25, 1980.

Ronald J. Yengich and Walter F. Bugden, Jr., Salt Lake City, for defendant and appellant.

Robert B. Hansen, Atty. Gen., Craig L. Barlow, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Defendant was tried and convicted by a jury in the District Court, Utah County, of arson, a second degree felony,[1] and burglary, a third degree felony.[2] He appeals asserting that he was denied effective assistance of counsel in violation of Utah Constitution Article I, Section 12 and the Sixth

1. Section 76–6–103.

2. Section 76–6–202.

Amendment to the United States Constitution.

All statutory references are to Utah Code Ann., 1953, as amended, unless otherwise indicated.

Defendant was originally charged with these crimes jointly with two other individuals. One joint defendant, Hebertson, retained private counsel. The charges against Hebertson were ultimately dismissed on motion of the State, and he testified against defendant here. Defendant and the other joint defendant, Hall, were found to be indigent, and Robert Schumacher, an attorney in the Utah County Public Defender's Office, was appointed to represent both.

Sheldon Carter, also an attorney in the Utah County Public Defender's Office, substituted for Schumacher at the arraignment of defendant and Hall. Schumacher represented both defendant and Hall at the preliminary hearing, and on January 22, 1979 filed a notice of alibi on behalf of both. On January 26, 1979, Schumacher filed an amended notice of alibi, again on behalf of both defendant and Hall. On January 30, 1979, Schumacher represented Hall at a hearing before the District Court at which defendant was not present. At this hearing, Hall plead guilty to attempted burglary, a class A misdemeanor, and the charge of arson against him was dismissed. In exchange for the reduced charge, Hall agreed to testify against defendant. Two days later, on February 1, 1979, defendant was tried on the two felony charges, with Carter representing him.

■ The record does not disclose any withdrawal by Schumacher as counsel for

defendant, nor any appointment of Carter to represent him. Further, there is no indication that defendant was advised of the conflict of interest which his appointed counsel had, nor is there any waiver by defendant of his constitutional right to assistance of counsel, noted *ante.*

That a conflict of interest arose is clearly shown by this record. As the California Appellate Court stated in *People v. Superior Court of San Luis Obispo*, 94 Cal.App.3d 626, 156 Cal.Rptr. 487 (1979):

It appears from petitioner's statements to the court that one or both real parties [defendants] have been offered an opportunity to plead guilty to a lesser charge in return for testifying against the other real party.

We hold that a conflict of interest arose from this offer which prevents the public defender from effectively representing the client to whom the offer was made (hereafter "offeree") regarding the offer. [citing cases] The public defender cannot ethically advise the offeree to accept the offer or otherwise advise him in any manner which might encourage a decision to accept the offer—to do so would be directly adverse to the interests of his other client. Conversely, counsel necessarily acts against the interests of the offeree if he advises rejection of an offer which should be accepted. [at 156 Cal.Rptr. 488–489] [3]

Schumacher chose to advise Hall, the offeree, thereby adversely affecting the interests of defendant, his other client. He was not effectively assisting this defendant; he was not identifying with his interests.[4] This conflict was not remedied by having the Public Defendant's associate try the

---

**3.** In the *San Luis Obispo* case, the State petitioned the Court for the appointment of separate counsel for each defendant because of inconsistent plea bargaining offers which placed the public defender in a conflict of interest with respect to its clients, and before either defendant was advised of the offer. When that petition was denied, the State appealed, and the appellate court reversed. The Court found that as the defendants had not been counseled with respect to the details of the plea offer, they had no information on which to make a knowing

and intelligent waiver of their constitutional rights to counsel.

**4.** "A defendant is entitled to the assistance of a competent member of the Bar, who shows a willingness to identify himself with the interests of the accused and present such defenses as are available under the law and consistent with the ethics of the profession." *Alires v. Turner*, 22 Utah 2d 118, 449 P.2d 241 (1969). See also, *State v. McNicol*, Utah, 554 P.2d 203 (1976).

case. Members of the same association may not represent defendants with conflicting interests, as there is a strong likelihood that both have been privy to the confidences of both defendants.[5]

■ The State contends that defendant cannot raise the issue of ineffectiveness of counsel due to conflict of interest for the first time on appeal, citing *State v. Tippetts*, Utah, 584 P.2d 892 (1978) as requiring an objection on the part of defendant at the trial in order to preserve this point. But the holding in *Tippetts* was based on the ground that there was no conflict of interest, not only because the attorney stated to the District Court that he knew of no conflict, but also, the examination of the record by this Court revealed no conflict of interest between the two defendants there.[6]

We do not find the State's argument persuasive when the conflict of interest is as clear as it is in this case. The attorneys responsible for raising an objection did not do so. And we cannot assume that under these circumstances the attorneys advised defendant of this conflict, nor that they advised him that he must object on his own behalf to avoid waiving his constitutional rights. "The law will not assume that counsel has advised his client of his inadequacies or those of his associates." *Commonwealth v. Via, supra*, note 5.

The State further argues that defendant was not prejudiced by the conflict of interest of his attorneys. But the assistance of counsel is among those "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman v. California*, 386 U.S. 18, 23, 87 S.Ct. 824, at 827, 31 L.Ed.2d 483 (1967). See also *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426

(1978). We believe there is error here, and need not inquire into whether the error was harmless, because of the fundamental nature of the constitutional rights involved. *Holloway, supra.*

Defendant urges this Court to adopt a rule requiring separate and independent counsel in cases in which two or more defendants are charged with crimes arising out of the same incident. We need not reach the full scope of this matter, as it is unnecessary to our disposition of this case.[7]

Defendant seeks a reversal of his conviction and a new trial. We agree that a new trial is necessary, and this case is remanded for that purpose.

MAUGHAN and STEWART, JJ., concur.

CROCKETT, Chief Justice (dissenting):

Originally there were three defendants in this case charged jointly with arson and theft of money from a contractor's mobile-home office. Don Hebertson, represented by employed counsel, was dismissed out of the case after confessing and implicating the other two, Shane Hall and this defendant, Henry Carl Smith. The court appointed the Utah County Defender's office, which has a number of attorneys on its staff, to defend Hall and Smith.

At the preliminary hearing, Mr. Robert Schumacher of the Defender's staff appeared as attorney of record representing both of those defendants. After they were bound over to the district court, another of the Defender's attorneys, Mr. Sheldon Carter, appeared at the arraignment when the defendants entered their plea of not guilty. Mr. Schumacher then filed an identical defense of "notice of alibi" for both and filed an identical "amendment of notice of alibi" for both.

---

5. *Commonwealth v. Via*, 455 Pa. 373, 316 A.2d 895 (1974); *Commonwealth v. Westbrook*, Pa., 400 A.2d 160 (1979).

6. The author of the opinion in this case dissented in *Tippetts* on the ground that the defendant there was ". . . entitled to an evidentiary hearing on the question of any possible prejudice resulting from . . . dual representation." 584 P.2d at 893.

7. But see *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Holloway v. Arkansas, supra; United States v. Lawriw*, 568 F.2d 98 (8th Cir. 1977); and the A.B.A. Standards for Criminal Justice, The Defense Function, § 3.5(b) (1971) for analyses and comments concerning dual representation.

Within five days thereafter, Mr. Schumacher represented Hall at a hearing wherein the prosecutor moved to dismiss the charge of arson against defendant Hall, who then entered a plea of guilty to a charge of burglary, which involved an agreement that Hall would testify against Smith. After that occurred, Mr. Schumacher did nothing further in representing Smith, but turned the latter's case over to Mr. Carter, who represented Smith in all proceedings thereafter, including conducting his trial.

Insofar as the interests of justice in this case are concerned, it is significant that the record indicates that Mr. Carter rendered an entirely competent and credible service in his defense of defendant Smith; and further, that the evidence shows beyond any reasonable doubt that the defendant Smith instigated the planning of the crime and actively participated in burning the trailer and stealing the cash box. In that regard, it is further important to note that, in his brief on appeal, the defendant raises no question as to either of the just-stated facts, but argues only matters relating to his right to uninhibited counsel, a subject which was never mentioned to the trial court until after his conviction.

In writing this dissent, I take full cognizance of and note my agreement with certain propositions respecting the right to counsel. One accused of crime is entitled to counsel who will give unreserved and undivided commitment to his interests and his defense.[1] If it appears that one attorney represents two or more defendants jointly charged, and the circumstances are such that there is any likelihood that there may be a conflict, so that the interest of one may give way to that of the other, each accused should be entitled to separate counsel.[2] But the facts of this case do not conflict with those propositions.

It is apparent that after the defendant Hall had entered into the agreement to enter a plea of guilty, Mr. Schumacher recognized that there might be a problem if he continued to represent the defendant Smith. He acted in accordance with what I regard as a high standard of professional ethics by discontinuing his representation of the defendant Smith. He did nothing further therein, except to turn the latter's case over to Mr. Carter, who, the record shows, did an entirely competent job of representing the defendant's interests. The matter of over-riding importance in this case is that there is not even the merest conjecture that there was any deficiency in the relationship of counsel and client, nor any fault or failure therein, which had, or could have had, any adverse effect upon the defendant or his conviction.[3]

It does not square with my sense of justice for a defendant to accept the very considerable efforts of a conscientious and capable lawyer, who represents him and tries his case without the defendant giving any word or indication of disagreement or objection, stands by to abide the outcome, and when he loses, then turns and attacks that counsel as not having given him proper representation.

I would affirm the conviction.

HALL, Justice (dissenting):

I concur in the dissent of Mr. Chief Justice Crockett and in support thereof, comment further as follows.

In reversing the trial court, the main opinion quotes from *People v. Superior Court*.[1] That case is an intermediate appellate court decision, which, of course, we need not espouse, particularly since it is factually inapposite. The court there held that counsel had a conflict of interest when the two defendants he was representing were offered inconsistent plea bargains, although both defendants declined the offers.

1. *Glasser v. U. S.*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

2. *People v. Gallardo*, 269 Cal.App.2d 86, 74 Cal.Rptr. 572 (1969).

3. *State v. Andrews*, 106 Ariz. 372, 476 P.2d 672 (1970).

1. 94 Cal.App.3d 626, 156 Cal.Rptr. 487 (1979).

Such is not at all comparable to the facts of this case. Schumacher had nothing to do with Smith's defense after the guilty plea was entered by Hall. Carter, who did try the case, was not a party to the plea bargaining session, and the only reasonable inference to be drawn from Schumacher's nonparticipation at trial is that any question of conflict of interest was thereby eliminated. Such an inference is adequately supported by the defendant himself since at trial he did not once complain of the assistance rendered by either Schumacher or Carter, nor of their competency, good faith, ethics or presence of any conflict of interest. He now so challenges his legal representatives for the first time on appeal, a practice which we have traditionally refused to condone.

The main opinion makes passing reference to *Glasser v. U. S.*[2] and *Holloway v. Arkansas*[3] and apparently accepts the facts and decisions therein as decisive of the issue presented here. However, *Glasser* is a complete factual stranger to the case at hand. In that case, co-defendants were actually tried over the objection of one co-defendant as to joint representation by the same counsel. In the instant case, defendant Smith at no time objected to his representation by Carter, and, significantly, *only* Smith stood trial, represented *solely* by Carter.

As was stated in *Holloway*:

> One principle applicable here emerges from *Glasser* without ambiguity. Requiring or permitting a single attorney to represent co-defendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel.

It thus seems clear, in the absence of a showing otherwise, that where *one* counsel represents only *one* co-defendant, no violation of a constitutional right occurs.

The generalization in the main opinion that "members of the same association may not represent defendants with conflicting interests," while true in most instances, is not to be taken as an absolute prohibition. *State v. Thompson*[4] points out that a conflict of interest arises only when such conflict becomes manifest as by a timely made "strong objection," as was the case in *Glasser* and *Holloway*.

Our own recent case of *State v. Tippetts*[5] also bears upon this matter. In that case, co-defendants were represented by separate counsel. On the day of trial, the attorney for Tippetts' co-defendant, Lopez, was ill and the latter accepted representation by the former's attorney, without objection. We held that, absent an affirmative showing of a "conflict of interest," no constitutional issue was raised and that *Glasser* was not in point. The same rationale was employed in *State v. Andrews*:[6]

> In order for assistance by counsel for an accused to be impaired by representation of the same attorney, actual conflict must in fact have existed or be inherent in the facts of the case from which a possibility of prejudice flows. [Citations omitted.]

In the absence of any evidence whatsoever of any conflict of interest, I decline to engage in unwarranted speculation as to its existence. I would therefore affirm the judgment of the trial court.

---

2. 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

3. 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978).

4. 108 Ariz. 500, 502 P.2d 1319 (1972).

5. Utah, 584 P.2d 892 (1978).

6. 106 Ariz. 372, 476 P.2d 673 (1970).