■ The People of the State of New York, Respondent, v Michael Gaines, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Queens County, rendered October 27, 1978, convicting him of robbery in the first degree, assault in the first degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence. Judgment reversed, as a matter of discretion in the interest of justice, and new trial ordered. On October 18, 1977 two armed men, each holding a child in front of him as a hostage, entered a fruit and vegetable stand, pulled ski masks over their faces, then robbed and shot the owner. At trial the sole issue was identification of the defendant. The People presented two witnesses as to identification, Maralyn Nitschke and Mattie Evans. Nitschke had been inside the stand when the robbers entered and had witnessed the crime. She testified that she had 30 seconds to see the robbers' faces before they pulled their ski masks down. Most of this time elapsed while the robbers were outside the stand on an 8- to 10-foot rampway entrance. In December, 1977 Detective Alleyne showed Nitschke six photographs at her

home. She identified a photograph of the defendant as one of the robbers. A week later Nitschke was asked to view a lineup at the precinct. She asked Alleyne whether the person whose photograph she had identified would be in the lineup, and was told yes. At the lineup, which was held by Criminal Term to have been properly conducted, Nitschke identified the defendant. At the identification hearing pursuant to *United States v Wade* (388 US 218), Nitschke testified that one robber (allegedly this defendant) had a dark complexion, was shorter than she was, namely five foot three to five foot four inches in height, and wore a *blue* peacoat at the robbery. When asked whether the robber was in the courtroom, she identified a spectator in the back of the courtroom but then revised her statement, saying that she could not identify anyone. Defendant was sitting at defense counsel's table at the time. Defendant's motion to suppress the identification testimony was denied. At trial Nitschke's testimony was similar to her testimony at the *Wade* hearing, but she was able to make an in-court identification of the defendant. She also testified that the defendant weighed 120 to 125 pounds. She explained her previous statements at the *Wade* hearing as resulting from nervousness. The witness Evans had seen three persons outside the fruit and vegetable stand, and recognized one, allegedly the defendant, from the neighborhood. Subsequently, she crossed the street and heard a "bang", and thereafter saw the same three persons running. Two months later she was unable to identify the defendant at a lineup. At trial she testified that the person she had recognized outside the stand had worn a *red* jacket. She also stated that the lighting at the lineup had confused her. She described herself as far-sighted, and admitted that her questioner looked a little fuzzy. Detective Alleyne also testified at trial, offering a photograph of the lineup. He testified without objection that Nitschke had been able to identify someone at the lineup. Defendant testified, denying the charges. He was 18 years old, five feet 10 inches tall, and weighed 175 pounds. The trial court gave a bare-bones charge to the jury, choosing not to marshal the evidence at all. The record shows that the identification evidence was, at the least, extremely weak and confused. In the context of this case, the trial court's failure to give something more than a bare-bones charge on the sole issue of identification was error (see *People v Carney,* 73 AD2d 972; *People v Mabry,* 58 AD2d 897; cf. *People v Goods,* 75 AD2d 650). The jury was given no guidance or criteria to apply in evaluating the identification testimony. Under the circumstances a new trial is required. We have examined defendant's other contentions and find them to be without merit. Mollen, P. J., Damiani, Weinstein and Thompson, JJ., concur.