STATE of Utah, Plaintiff and
Respondent,

v.

Donald Leon MALMROSE, Defendant
and Appellant.

No. 17661.

Supreme Court of Utah.

June 22, 1982.

David L. Wilkinson, Atty. Gen., Robert N. Parrish, Asst. Atty. Gen., Salt Lake City, for defendant and appellant.

John B. Hutchison and Brian R. Florence of Florence & Hutchison, Ogden, for plaintiff and respondent.

HOWE, Justice:

Defendant appeals from his conviction by a jury of the crime of forcible sexual abuse.

The victim was sexually assaulted while jogging during the daytime on a running course at Weber State college. The only disputed issue at trial was the identity of her assailant. Immediately after the assault she reported it to the police and gave them a description of her assailant. Over a period of weeks she reviewed photographs until she identified the defendant from a school yearbook where he appeared as an athletic coach. She later identified the defendant in a lineup but that identification was suppressed subsequently because no recording had been made as required by statute. At trial, the victim stated there was no doubt whatsoever in her mind that the defendant was the man who had assaulted her. She had observed him during the entire episode with the exception of a moment when she turned her head in order to avoid a blow to the face. She was always conscious. He was clearly in front of her as he hovered over her, going through the act of

sexual assault for a total period of seven or eight minutes.

Defendant, on the other hand, testified that he was not at the running course on the day of the assault. Instead, he was attending to his duties as a teacher and coach at a middle school. Before going home, he stopped briefly at a market. Various witnesses testified in support of his alibi. After three days of trial, including rebuttal testimony by the prosecution, the jury returned a verdict of guilty.

Defendant engaged new counsel to pursue this appeal. His assignments of error may be categorized into three major issues. The first issue is whether the defendant had effective assistance of counsel at trial as guaranteed under the Sixth Amendment of the United States Constitution and Article 1, Section 12 of the Utah State Constitution. Defendant recognizes that many of the points he raises on appeal were not properly preserved by defense counsel at trial and cites them as illustrations of ineffective representation. The second issue is whether prejudicial error was committed by the court in some of its rulings. Finally, the third major issue is whether an instance of prosecutorial misconduct occurred at trial which prejudiced the defendant.

Defendant relies upon the *U.S. v. Bosch*, 584 F.2d 1113 (1st Cir. 1978) standard of "reasonably competent assistance of counsel." The court in *Dyer v. Crisp*, 613 F.2d 275 (10th Cir. 1980) interpreted the standard to impose a four-part test to determine whether there has been "reasonably competent assistance of counsel." The test requires the defendant to (1) establish proof of the ineffectiveness of counsel, (2) show that the ineffectiveness was due to the inadequacy of counsel and not as a result of trial strategy, (3) demonstrate that better representation might have had some effect upon the result of the trial, and (4) prove that motions and objections which were not made would not have been futile if raised. The standard in *Dyer* has not been expressly adopted in Utah.

However, there are Utah cases which when read together parallel that standard.

In *State v. Gray*, Utah, 601 P.2d 918 (1979), we held that the accused has a right to effective counsel who does more than satisfy a pretense of representation. We stated that the defendant bears the burden of establishing ineffectiveness. The proof must be demonstrable, not speculative. In *State v. McNicol*, Utah, 554 P.2d 203, 205 (1976), we stated that the courts will not second guess "legitimate exercise of judgment as to trial tactics or strategy." Other Utah cases have held that there is no prejudicial error warranting reversal of the conviction unless better representation is likely to have produced a different result. *State v. Gray*, supra; *State v. Forsyth*, Utah, 560 P.2d 337 (1977); *Jaramillo v. Turner*, 24 Utah 2d 19, 465 P.2d 343 (1970); *Alires v. Turner*, 22 Utah 2d 118, 449 P.2d 241 (1969). In *Heinlin v. Smith*, Utah, 542 P.2d 1081 (1975), we held that the failure of counsel to make motions or objections which would be futile if raised does not constitute ineffective assistance. In order to show ineffective assistance of counsel in this case, therefore, defendant must show that the standards we have enumerated in previous cases were not satisfied.

▮▮▮ Rule 4, Utah Rules of Evidence, requires a clear and definite objection to evidence at trial before appellate review can be requested. *Stagmeyer v. Leatham Brothers, Inc.*, 20 Utah 2d 421, 439 P.2d 279 (1969); *White v. Newman*, 10 Utah 2d 62, 348 P.2d 343 (1960). The assignments of error where no objection was made at trial, therefore, are considered only to the extent that they may bear upon the claim of incompetence of counsel.

Defendant asserts that the victim's identification of him at trial was tainted and should have been suppressed. His counsel did not then object to the identification, but did provide assistance to his client by raising the issue at a pre-trial suppression hearing. The issue was argued and ruled upon. The court found that the victim could testify at trial because the identification at the preliminary hearing was not the product of the lineup but was a product of "sufficient look-alike characteristics" to the assailant

that the victim picked him. *State v. Harris*, 26 Utah 2d 365, 489 P.2d 1008 (1971), supports such a ruling. The hearing court also determined that the identifications were made independently of any suggestive influences. The identification of the defendant in the lineup was suppressed, not because of any police misstatement or missuggestion with the photos, but because of failure of the police to maintain a record as required by statute.

Defense counsel need not have made objection at trial if the objection would have been futile. He did raise and argue the issue at a suppression hearing where the court ruled that identification at trial would be allowed since it was independent of suggestive influences, but the lineup would be suppressed. This Court has held that the question of whether the lineup was conducted unfairly and the evidence from it was tainted is within the discretion of the trial court. *State v. Ervin*, 22 Utah 2d 216, 451 P.2d 372 (1969). Under the standard in *State v. Perry*, 27 Utah 2d 48, 492 P.2d 1349 (1972), reversal is demanded where the identification is so unnecessarily suggestive and conducive to irreparable mistaken identification that the defendant is denied due process.

■■■ There is nothing in the record to suggest that the findings of the suppression hearing that the victim's identifications were made independently of suggestive influences should or would have been different had that issue been considered again at trial. Under the rule in *Niel v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), which requires viewing the reliability of identification in light of the totality of circumstances, there is sufficient evidence in the record that the victim had the opportunity to view the defendant, exhibited a sufficient degree of attention during the crime, had previously described the defendant accurately, was sufficiently certain of her identification and identified the defendant within a reasonable length of time from the crime to the confrontation. Accordingly, the trial court's finding is reasonable and the failure of defense counsel to again object to identification at trial did not prejudice defendant.

The admission of expert testimony based upon official weather reports and the admission of a written laboratory report linking defendant's blood type to the assailant are further examples cited by defendant of the admission of evidence without objection at trial by his counsel.

■■■ The trial court found the admission of expert testimony based upon official weather reports was "clearly admissible as an exception to the hearsay rule." We agree. It is therefore understandable why trial counsel made no objection. Effective representation does not require counsel to object when doing so would be futile.

■■■ The trial court inquired of defense counsel whether he objected to the written laboratory report, but he answered that he did not. The trial court on motion for new trial found that "the court cannot know at that point what defendant counsel's tactical position [was] and must rely on [his] failure to object." An examination of the written laboratory report reveals that it is not a laboratory report at all; it is merely a letter stating the conclusion of the lab test which had already been testified to by the witness. This Court will not second guess the strategy of counsel at trial. Counsel did argue the lack of certainty in the conclusions of the report with relation to his client. The exhibit would not be admissible as a hearsay exception. Under Rule 4 of Utah Rules of Evidence, however, an erroneous admission of evidence is treated as harmless error absent a showing that it had substantial influence in bringing about the verdict. Defendant has made no such showing.

Defendant also argues that the prosecution's alibi rebuttal witnesses had a devastating effect on defendant's case and that the prosecution did not provide advance notice of their identity as required under § 77–14–2, Utah Code Ann. 1953. Again, no objection was made by defense counsel at trial and it is understandable why. He himself had failed to comply with the stat-

ute by not disclosing the names of all of his alibi witnesses before the expiration of the ten-day period imposed by the statute. In other words, both attorneys appear to have failed to comply with the statute. Had the lack of notice been made an issue at trial, the statute allows the trial court to waive, for good cause, its strict requirements. As it was, the trial court specifically found on motion for new trial that no harm resulted to defendant since his counsel had actual knowledge well before the trial commenced as to who the prosecution's witnesses were and how they would be used.

Defendant cites three other examples of what he considers evidence of ineffectiveness of his trial counsel.

■ First, defendant contends that jury voir dire by trial counsel was deficient in that "many areas of potential bias and competency were inadequately explored by the court or counsel." Other than an incomplete recitation of facts from the record, he offers no support or authority for the contention. Traditionally, the trial court is given considerable latitude as to the manner and form of conducting the voir dire examination and is only restricted in that discretion from committing prejudicial error. *Utah State Road Commission v. Marriott*, 21 Utah 2d 238, 444 P.2d 57 (1968). Defendant does not state that or how the allegedly inadequate exploration in voir dire resulted in prejudicial error. Neither does the trial record support any abuse of discretion or that the exploration which was conducted was, in fact, inadequate. Defendant does not argue that the result of the trial would have been different or that defense counsel's choice not to ask more questions was due to incompetence rather than trial strategy.

■ Secondly, defendant argues that a statement made by his counsel in his opening argument was a prejudicial suggestion. The statement was that the defendant had been charged with the crime through a series of coincidences, chiefly that his car was found by the police parked in an area where exhibitionists had been known to loiter. Undoubtedly counsel's purpose in making the statement was to provide to the jury a suggestion as to how the defendant came to be a suspect. Counsel obviously thought that it would have an exculpating effect on the defendant and we believe that his remark falls into the category of trial strategy, a subject about which even the best of trial lawyers may not always agree. Furthermore, defendant has not shown any harm from the statement nor given us any indication that the statement had any adverse influence on the jury.

■ Thirdly, defendant asserts that the failure of his counsel to attempt to introduce polygraph results was error. He fails to recognize that the results were excluded at the suppression hearing, may not have been admitted at trial under the holdings in *State v. Abel*, Utah, 600 P.2d 994 (1979), and in *State v. Jenkins*, Utah, 523 P.2d 1232 (1974), and would have opened the door to the prosecution using the results of its polygraph. That the non-introduction of the polygraph results was a trial strategy is a reasonable conclusion. That the introduction of the results would have changed the outcome of the trial was not argued. We find no prejudice to defendant on this point.

■ None of the points raised by defendant has either individually or collectively been shown by him to be ineffective assistance of counsel as opposed to trial strategy. Nowhere has defendant effectively argued with any support that a different result would have occurred had defense counsel's conduct of the trial been different. In some instances such objections would have been futile if they had been made by defense counsel. Even taken together, all of the points raised by defendant do not appear to have been prejudicial to him.

## PREJUDICIAL ERROR BY COURT

In addition to the argument that counsel and the court should have conducted a more extensive voir dire of the jury, defendant contends that the court committed prejudicial error in other instances as well.

He argues that the challenge for cause of two jurors was improperly denied. He makes no claim that the court's failure to excuse the jurors compelled defense counsel to use the peremptory challenge he might have used to strike other prospective jurors' names from the list. Nor does he show that any prejudice resulted because of the trial court's failure to grant the challenges for cause. *State v. Bautista*, 30 Utah 2d 112, 514 P.2d 530 (1973). Further, only one juror who had been challenged for cause was eliminated with a peremptory challenge; and, an examination of the trial record does not support "the existence of a state of mind on the part of the juror which leads to a just inference in reference to the case that [s]he [did] not act with entire impartiality." Utah Code Ann., § 77–30–18(2) (1978).

In *State v. Moore*, Utah, 562 P.2d 629 (1977), we held that compelling a party to exercise a peremptory challenge to eliminate a juror was prejudicial error where the juror should have been excused for cause because he expressed bias and repeatedly stated a concern as to whether he could be fair and impartial. The juror in the case before us neither expressed a bias nor voiced a concern that she could not be fair and impartial. At the beginning of voir dire she merely questioned whether she should hear the case; however, in the course of voir dire she did not evidence any strong feelings that would close her mind to the testimony to be offered. That is the standard required for dismissal under *State v. Bailey*, Utah, 605 P.2d 765 (1980).

■ Defendant further contends that the denial of expert testimony on the issue of the reliability of eyewitness testimony was prejudicial error. In *State v. Griffin*, 626 P.2d 478 (1981), this Court held that whether expert testimony should be allowed as to the merits of eyewitness identification is within the discretion of the trial court. The trial court in this case found that such testimony would amount to a lecture to the jury about how they should perform their duties. Such a conclusion is not an abuse of discretion, particularly where there has

been no showing that the excluded evidence would probably have had a substantial influence in bringing about a different verdict.

■ At the trial defense counsel took no exception to jury instructions; however, defendant now argues that the fact the trial court failed to give an instruction on the inherent frailties of eyewitness identification was prejudicial error. Rule 19(c) of the Utah Rules of Criminal Procedure, Utah Code Ann., § 77–35–19(c) (1953), prohibits the assigning of error unless an objection was made before the jury was instructed except where it is necessary to do so to avoid manifest injustice. Defendant makes no showing of injustice. We have not heretofore held that such an instruction is required. We believe the giving of it should be left to the discretion of the trial court.

## PROSECUTORIAL MISCONDUCT

■ Defendant argues that prosecutorial misconduct occurred in two instances. In one instance, defendant contends that the prosecution knowingly fostered a false impression which could have affected the judgment of the jury and deprived him of a fair trial. See *Walker v. State*, 624 P.2d 687 (1981). The trial court on motion for new trial found that it could not be concluded that the prosecution had intended to mislead the jury. The trial record supports that finding. The prosecution asked a witness on rebuttal to read the dates of the last two journal entries which she had made. Those dates were later than the date of the assault. The prosecution asked no further questions. Defense counsel asked no questions in an attempt to clarify the matter although he had the opportunity. The record contains no evidence that any misunderstanding was created. Certainly, as the trial court found, there was no evidence in the record that a false impression was knowingly fostered by the prosecution.

In the other instance, the defendant claims prejudicial error by the court's refusal to give a cautionary instruction regarding a question asked him by the prosecutor

as to whether the defendant had admitted to a police officer that he was a voyeur. The trial court found that to have granted a cautionary instruction would only have drawn further attention to the remark. The jury had already been instructed that counsel's statements are not evidence. Defense counsel objected to the question and the court did not allow the prosecution to continue along that line of questioning.

There is reversible error only if there is a reasonable likelihood that an improper question by the prosecutor so prejudiced the jury that in its absence there might have been a different result. *State v. Hodges*, 30 Utah 2d 367, 517 P.2d 1322 (1974). While the question concerning voyeurism was not a direct reference to prior criminal misconduct, because of its inflamatory nature, its propriety was questionable. Nonetheless we believe the trial judge did not err in refusing to dignify it with a cautionary instruction. In denying defendant's motion for a new trial, the trial court apparently thought that the remark was not prejudicial so as to warrant a new trial. Such a determination is better left to the trial judge due to his advantaged position. See *State v. Hodges*, supra. There is certainly no evidence pointed to by defendant anywhere in the record to suggest that the jury either relied on the statement for its verdict or that there is a likelihood that they would have found the defendant not guilty had the statement not been made.

The only disputed issue at trial was the identification of the assailant. The victim was very positive in her identification of the defendant. Whatever else defense counsel may or may not have done in areas other than identification appears to have been of less importance. On the firm identification of the victim alone, it was reasonable for the jury to have found the defendant guilty. While at this point defendant may be convinced that he would have preferred another strategy than the one that he used at trial, he has not shown prejudicial error.

Judgment affirmed.

HALL, C. J., and OAKS, J., concur.

STEWART, Justice, dissenting:

I respectfully dissent. In this case the defendant, a school teacher, was convicted solely on the basis of one person's eyewitness identification, which was different from that person's initial description, and a blood test which showed the defendant to have the same blood type as 40% of the population. Against this was strong alibi and character evidence from students and fellow teachers. The trial court's refusal, on the facts of this case, to admit expert testimony on the unreliability of eyewitness identification and its failure to instruct the jury, *sua sponte*, on the appropriate caution with which eyewitness identification should be viewed, require a new trial in my view.

The inherent dangers of good faith error in eyewitness identification are widely recognized. "The vagaries of eyewitness identification are well-known; the annals of criminal law are rife with instances of mistaken identification." *United States v. Wade*, 388 U.S. 218, 228, 87 S.Ct. 1926, 1932, 18 L.Ed.2d 1149 (1967). Numerous law review articles have been written substantiating the unreliability of eyewitness identification and the serious threat that it poses to the proper administration of criminal justice. E.g., *Did Your Eyes Deceive You? Expert Psychological Testimony on the Unreliability of Eyewitness Identification*, 29 Stan.L.Rev. 969 (1977); *Due Process Standards for the Admissibility of Eyewitness Identification Evidence*, 26 Kan.L.Rev. 461 (1978); *Eyewitness Identification Evidence: Flaws and Defenses*, 7 No.Ky.L.Rev. 407 (1980); Ellis, Davies, Shepherd, *Experimental Studies of Face Identification*, 3 Nat.J. Crim.Def., 219 (1977); *Use of Eyewitness Identification Evidence in Criminal Trials*, 21 Crim.L.Q. 361 (1979). Particular difficulties are encountered when photographs are used some time after the event to identify a defendant because of the tendency of the witness to substitute in his mind the image on the photograph for that of the perpetrator of a crime if there is some likeness between the two. Bates, *Identifi-*

cation from Photographic Evidence, 6 An-glo-Am.L.Rev. 90 (1977); Libling, Use of Photographs for the Purpose of Identification, 1978 Crim.L.Rev. 343.

In United States v. Telfaire, 469 F.2d 552, 555 (D.C.Cir.1972), the court stated:

The presumption of innocence that safeguards the common law system must be a premise that is realized in instruction and not merely a promise. In pursuance of that objective, we have pointed out the importance of and need for a special instruction on the key issue of identification, which emphasizes to the jury the need for finding that the circumstances of the identification are convincing beyond a reasonable doubt. This need was voiced in 1942 in McKenzie v. United States [126 F.2d 533] and it has been given vitality in our opinions of recent years—following the Supreme Court's 1966 Wade-Gilbert [v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967)]-Stovall [v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)] trilogy focusing on the very real danger of mistaken identification as a threat to justice. We refer to our post-Wade opinions in Gregory [v. United States, 369 F.2d 185 (1966)] and Macklin [v. United States, 409 F.2d 174 (1969)]. These opinions sought to take into account the traditional recognition that identification testimony presents special problems of reliability by stressing the importance of an identification instruction even in cases meeting the constitutional threshold of admissability. [Footnotes omitted].

Recently, a number of state and federal courts have attempted to minimize the dangers of eyewitness identification, when it is a crucial issue, by adopting the model jury instruction on eyewitness identification set forth in Telfaire or a similar version of that instruction.[1] E.g., United States v. Hodges,

---

1. In Telfaire, 469 F.2d at 558–59, the court framed the following instruction:

One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of providing identity, beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

[In general, a witness bases any identification he makes on his perception through the use of his senses. Usually the witness identifies an offender by the sense of sight—but this is not necessarily so, and he may use other senses.] *

* Sentence in brackets ( [ ] ) to be used only if appropriate. Instructions to be inserted or modified as appropriate to the proof and contentions.

(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

[You may also take into account that an identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.]

515 F.2d 650 (7th Cir. 1975); *United States v. Holley*, 502 F.2d 273 (4th Cir. 1974); *United States v. Barber*, 442 F.2d 517 (3rd Cir. 1971); *Commonwealth v. Rodriguez*, 378 Mass. 296, 391 N.E.2d 889 (1979); *State v. Green*, 86 N.J. 281, 430 A.2d 914 (1981). In *People v. Gaines*, 80 A.D.2d 561, 435 N.Y.S.2d 346 (1981), the court ordered a new trial, holding that "the trial court's failure to give something more than a bare-bones charge on the sole issue of identification was error." 435 N.Y.S.2d at 347.

Some courts have even stated that in cases where identification is a major issue the trial judge should give an effective instruction even though defense counsel fails to request it. See e.g., *United States v. Butler*, 636 F.2d 727 (D.C.Cir.1980); *Macklin v. United States*, 409 F.2d 174 (D.C. Cir.1969); *People v. Hall*, 82 A.D.2d 838, 439 N.Y.S.2d 661 (1981). See also *State v. Schaffer*, Utah, 638 P.2d 1185 (1981) (Stewart, J., dissenting).

In the instant case, the victim was sexually assaulted on April 16, 1980. In June, defendant's car, a white Peugeot, was found improperly parked at an Ogden park location which had been the scene of sexual offenses unrelated to the criminal charge for which defendant stood trial. A picture was subsequently taken of defendant from his driver's license and shown to the victim in July, along with pictures of six other individuals. She chose two, including defendant's, and requested additional pictures of these individuals. Officer Moody, the investigating officer, testified that he then showed the victim a high school yearbook, opened to a page on which defendant appeared with the studentbody in his capacity as a coach, and asked her if that was the man. The victim, however, testified that she thumbed through the book until she found the picture. In any event, it was not until approximately three months after the assault that defendant became a suspect through the use of photographic identification.

Officer Moody also testified that he had not found either the blue sweat suit apparently worn by the assailant during the assault nor located the only car, a silver Honda, seen by the victim in a nearby parking lot after the assault.

The victim's original description of her assailant included the following characteristics: He had a leathery complexion with large pores which appeared to be acne scars. He had a predominant line on the left side of his face. When he leaned forward his hair parted and fell to the right. By using her husband, who stands 5' 11" tall, as a reference point, she evaluated her assailant's height to be 6' 3" or 6' 4". At trial, it was established that the defendant was not a very close match of the description. Defendant is 6' 1", and did not have acne scars or leathery skin. The lines on the left side of his face were no more distinct than the lines on the right side. His hair, at the time of trial, was too short to form a part, and witnesses testified that for many years preceding the trial defendant had consistently kept his hair as short as it was at trial.

Defendant produced numerous witnesses to substantiate his alibi. Several students testified that school let out at 2:40 and they remained after school with Coach Malmrose between 2:45 and 3:15 to practice gymnastics. They particularly remembered that day because of the weather. They testified

[(3) You may take into account any occasions in which the witness failed to make an identification of defendant, or made an identification that was inconsistent with his identification at trial.]

(4) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.

that during the gymnastic practice that day Coach Malmrose requested they return the mats indoors because of a light rain which was beginning to fall. The mats, just purchased that year, were quite expensive and Coach Malmrose was particularly careful about keeping them in good condition. Therefore, even though the rain was not heavy enough to cause a baseball game being played on the school grounds to be called off, the students were requested to terminate their outdoor practice and return the mats indoors. The students recall watching the baseball game in lieu of gymnastic practice that afternoon.

The principal and school secretary testified that defendant had been teaching at the junior high school for eleven years and had a fine reputation, as well as an impeccable attendance record. They testified that the school policy required all teachers to remain one hour after classes ended and anyone leaving before that time was required to receive permission. The policy also required anyone with knowledge of a teacher's leaving early without permission to inform the principal. Aside from the policy requiring teachers to remain one hour past the school day, defendant's duty as coach regularly kept him after hours to assist in various sport practices and activities. There was no ·record of defendant ever requesting to leave early. And, although it was difficult to leave early without being seen by someone due to the nature of the school grounds and the placement of the parking lot, there was no record of defendant ever being seen leaving before the requisite time. Moreover, the school principal and secretary corroborated the students' testimony that it rained on the afternoon in question. Because of the afternoon rain, they both were concerned about their respective engagements scheduled for that evening.

At trial, there was evidence that defendant's blood type is similar to that of the assailant's. The evidence · was admitted without objection even though, as found by the majority opinion, it was inadmissible hearsay, and even though the blood type was similar to 40% to 45% of the male population at large. Other than this highly speculative evidence, the only evidence connecting defendant to the crime is the eyewitness testimony of the victim.

Apparently because there was no ʹother evidence of defendant's connection with the crime, apart from the victim's eyewitness identification, the prosecutor's direct examination of the victim and his argument to the jury sought to bolster the credibility of the victim's eyewitness identification by reference to her particular background and education. The prosecutor went into the victim's academic record extensively at trial. The testimony included the fact that she had an undergraduate degree in psychology, had received a master's in criminal justice and was half way through the Ph.D program, and was currently working on an MBA. In closing argument the prosecutor stated:

> We know that from listening to her testimony that she is a sensitive person that prides herself on her ability to perceive things and remember those things. And she has been very specific about those things that she perceived and remembered.

> \*    \*    \*    \*    \*    \*

> Ladies and gentlemen, the most critical identification at this point in the trial, the most critical description, is that given from the stand when that accusing victim looks in the face of the defendant and said, That is the man. I have no doubt in my mind.

In sum, the combination of the following factors renders the possibility of mistaken eyewitness identification particularly significant in this case. There was no eyewitness other than the victim connecting the defendant to the crime; there were discrepancies in the victim's description of the defendant and the defendant's actual appearance; there was a lengthy period of time between the assault and identification; the manner in which the first two pictures were presented was suggestive; and there was very substantial corroboration by numerous, highly credible witnesses of defend-

ant's alibi. Under these circumstances, I submit that there was error in excluding the expert testimony and in not giving a cautionary instruction on eyewitness identification.

DURHAM, J., concurs in the dissenting opinion of STEWART, J.