STATE of Utah, Plaintiff and Respondent,

v.

Scott B. BINGHAM, Defendant and Appellant.

No. 18774.

Supreme Court of Utah.

June 13, 1984.

Stephen R. McCaughey, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Earl F. Dorius, Asst. Atty. Gen., Ted Cannon, Co. Atty., David S. Walsh, Asst. Co. Atty., Salt Lake City, for plaintiff and respondent.

DURHAM, Justice:

Scott Bingham was convicted of burglary and theft by a jury in the Third Judicial District in Salt Lake. The appellant challenges the pretrial photographic identification, the failure to give certain jury instructions, the sufficiency of the evidence, the conduct of the prosecutor and the legitimacy of his conviction for theft of property worth more than $1,000. We affirm.

At midday on February 25, 1982, Mr. Ken Ethington went out to his front mailbox and observed a white male hurrying down the driveway of the home across the street carrying a camera. Mr. Ethington first noticed the man when he was about 60 feet away. As a member of the Neighborhood Watch program, Mr. Ethington had received instructions to be wary of strangers in the neighborhood. His suspicions were immediately aroused, and he paid particular attention to the man in the event he might be called as a witness. Mr. Ethington watched the man as he continued down the driveway, crossed the street and entered a white car parked on Mr. Ethington's side of the street, about 25 feet from where Mr. Ethington was standing. As the man got in the car, Mr. Ethington called out the license number to his wife, then shifted his attention back to the man. The man had some difficulty starting the car, but after several attempts finally succeeded and made a U-turn almost directly in front of Mr. Ethington. The man paid particular attention to Mr. Ethington, turning to stare at him several times as he drove away.

During this time, Mrs. Ethington was standing in the doorway of her home. She also observed the man while he was in the neighbor's driveway. She noted that he seemed nervous, that he was carrying a camera, that he had difficulty starting the car and that he made a U-turn in front of the Ethingtons' home. Immediately after, Mr. Ethington called out the license number, and Mrs. Ethington went in and wrote it on a pad by the phone. Because she and her husband were not well-acquainted with the Rollins, owners of the home across the street, she called the Rollins' next-door neighbor to tell them she had the getaway car's license number in the event there had been a burglary.

Approximately one hour later, Mr. Rollins returned home to find that the back door of his home had been forced open and the bedrooms ransacked. Several items of personal property, including his camera, were missing.

The police identified the getaway car as being registered to Leonard Varner. A few days after the burglary, the Ethingtons were shown a photo spread containing Varner's photograph. They could not identify anyone in the photo spread. The police then learned that Varner had been in Salt Lake County Jail on the date of the burglary. They also learned that Scott Bingham had been seen driving Varner's car about a week prior to the burglary. On March 4, seven days after the burglary and a few days after the Ethingtons had been shown the first photo spread, the police returned to show them a completely new spread of six photos, this time including a photo of Bingham. Bingham was identified as the suspected burglar by both of the Ethingtons, who examined the photographs separately. He was then arrested. None of the stolen goods were ever found. Bingham was convicted based on the Ethingtons' eyewitness identification of him.

■ The appellant first argues that the trial court erred in denying his motion to suppress the pretrial photographic identification. The appellant argues that the Ethingtons were pressured to select his photo during the second photo spread because they had already failed to pick a

photo from the first spread and because Mr. Ethington saw that Mrs. Ethington had already made an identification from among the six photos before he was given an opportunity to view them himself. Because of this so-called "pressure" the appellant claims the pretrial identification was suggestive and unreliable. The appellant does not specify the source of his right to a nonsuggestive and reliable identification, but he cites cases decided under the due process clause of the fourteenth amendment to the United States Constitution. We therefore assume this to be the source of the constitutional guarantee he claims. Because he does not argue that the result might differ under the due process clause of the Utah Constitution, we do not analyze the issue under that provision.

This Court has stated that "[w]here an identification procedure, even though suggestive, does not give rise to a substantial likelihood of misidentification, no due process violation has occurred." *State v. McCumber*, Utah, 622 P.2d 353, 357 (1980) (footnote omitted). The test for reliability was stated in *McCumber* as follows:

In determining the reliability of the identification under the totality of the circumstances, the court must also consider the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of any prior description of the criminal, the level of certainty demonstrated during the identification procedure, and the time between the crime and the identification.

*Id.* (footnote omitted).

In reviewing the evidence, we find the Ethingtons had a good opportunity to view Bingham. They saw Bingham around noon on a sunny day. Their view of Bingham was clear and unobstructed. Mr. Ethington was able to view Bingham as he left the driveway, entered the car, made several attempts to start it, and finally pulled out and made a U-turn almost directly in front of him. The Ethingtons also paid special attention to Bingham. They thought the situation suspicious and, as members of

Neighborhood Watch, paid particular attention in the event that they might be called as witnesses. The record does not indicate that any descriptions of Bingham the Ethingtons gave the police were inaccurate or significantly inconsistent. Both of the Ethingtons were positive and unequivocal in their identification of Bingham, stating they had no doubt he was the same man they had seen at their neighbor's home. Finally, the identification of Bingham from the photographs was made seven days after the burglary, sufficiently close to the event to avoid any clouding of memories. Considering all of these factors, we believe the Ethingtons' identification was reliable.

██ The appellant's next point on appeal is that the trial court erred in refusing his two requested jury instructions regarding eyewitness identification. The appellant contends that the jury instructions actually given at trial were inadequate to caution and direct the jury in evaluating whether the Ethingtons' identification of him was reliable. Jury instructions must be considered as a whole. "When taken as a whole if they fairly tender the case to the jury, the fact that one or more of the instructions, standing alone, are not as full or accurate as they might have been is not reversible error." *State v. Brooks*, Utah, 638 P.2d 537, 542 (1981) (citation omitted). At Bingham's trial, the jury was instructed that the State had the burden to prove him guilty beyond a reasonable doubt, that the jurymen were the exclusive judges of the credibility of the witnesses, and that the jurymen must find that Bingham had committed all of the elements of the offenses he was charged with in order to find him guilty. Taken as a whole, these instructions adequately advised the jury on the law pertaining to this case. *State v. Schaffer*, Utah, 638 P.2d 1185, 1187 (1981).

Moreover, we have recently affirmed our view that the giving of special instructions on eyewitness identification should be discretionary with the trial court. *State v. Reedy*, Utah, 681 P.2d 1251 (1984); *State v. Malmrose*, Utah, 649 P.2d 56 (1982). In this case, the Ethingtons had a substantial

opportunity to observe Bingham and paid special attention to him. They were certain of his identity a short time after the burglary. Additionally, the jury was alerted to any possibility of error in the Ethingtons' identification by the defense counsel's recitation of his two proposed, but rejected, instructions to the jury during his closing argument.

The appellant also argues that his conviction of burglary and theft should be reversed because of insufficient evidence. Again, this argument centers on the credibility of the eyewitness identification made by the Ethingtons. The standard of review for insufficiency of evidence is well established in this Court.

> In considering that question, we review the evidence and all inferences which may reasonably be drawn from it in the light most favorable to the verdict of the jury. We reverse a jury conviction for insufficiency of evidence only when the evidence, so viewed, is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted.

*State v. Petree,* Utah, 659 P.2d 443, 444 (1983) (citations omitted). The record contains sufficient evidence to identify Bingham as the burglar. As discussed above, the circumstances of the Ethingtons' identification of Bingham are not such as to bring its reliability into question. The circumstance of Bingham's leaving the scene of the burglary with a camera at about the time of the burglary obviously permits the inference that he was the burglar. When viewed in the light most favorable to the verdict of the jury, the evidence is not so inconclusive or so inherently improbable that reasonable minds must have entertained a reasonable doubt concerning appellant's guilt.

On his next point on appeal, the appellant argues the trial court erred in denying a mistrial based on the prosecutor's improper comment during closing argument that Bingham could have produced evidence concerning a shoe print left on the back door of the burglarized home. We have no record of this alleged misconduct in closing argument; we have only the following admonishment of the court to the prosecutor, given outside of the presence of the jury:

> THE COURT: Mr. Walsh, I have some concern about the inferential or the effect of saying that the defendant could have put in this evidence. Defendant has no obligation to put in any evidence. And I think Mr. Ebert requested that the shoes hadn't been put in and I let it in on that basis.
>
> MR. WALSH [prosecutor]: I didn't argue it until he opened it up.
>
> MR. EBERT [defense attorney]: May I say something on that?
>
> THE COURT: Sure.
>
> MR. EBERT: The evidence we had no access to was the footprints, not the shoes. And Mr. Walsh's argument was completely, well, I hope the jury wasn't fooled by it but I think it completely twisted it. There was no way on earth we could have gotten that footprint and the police had it and they let it slide through their fingers.
>
> THE COURT: Well, I understand. Okay. Gentlemen.

This Court cannot rule on matters outside the trial court record. *State v. Sparks,* Utah, 672 P.2d 92, 94 (1983). From this brief exchange, the only record of the alleged misconduct that we have, we cannot find reversible error in the denial of the motion for a mistrial. We can discover no account of any direct reference made by the prosecutor to the fact that the defendant had not taken the stand. Rather, it appears that the prosecutor's remark was in the nature of a comment on the relative weight or paucity of the evidence. "A prosecutor has the duty and right to argue the case based on the 'total picture shown by the evidence or the lack thereof.' *State v. Kazda,* Utah, 540 P.2d 949, 951 (1975), including reference to the paucity or absence of evidence adduced by the defense." *State v. Hales,* Utah, 652 P.2d 1290, 1291

(1982). We do not suggest that a prosecutor may properly argue that a defendant has some burden of proof or any obligation to produce evidence, but it is not established that this occurred here.

 As his final point on appeal, the appellant argues he cannot be convicted of theft under U.C.A., 1953, § 76–6–404, because this section requires the theft of property valued in excess of $1,000 and the value given at trial of the stolen property was only roughly estimated. At trial, however, the appellant failed to either request a jury instruction on a lesser included offense or to object to the admission of evidence concerning the value of the stolen property. In the absence of an objection, this Court may not assign as error the failure to give a jury instruction unless a resulting manifest injustice would occur. U.C.A., 1953, § 77–35–19(c); *State v. Malmrose, supra* at 59. Similarly, this Court will not review the admissibility of evidence that was not objected to at trial. *State v. McCardell,* Utah, 652 P.2d 942, 947 (1982). In this case we see no possibility of manifest injustice having occurred. Even if we were to accept only the "low end" of the uncontroverted estimate of value given at trial, an amount in excess of $1,000 was established.

Affirmed.

HALL, C.J., HOWE and STEWART, JJ., and JUDITH M. BILLINGS, District Judge, concur.

OAKS, J., having resigned, does not participate herein.

BILLINGS, District Judge, sat.