[redacted]

**The STATE of Utah, Plaintiff and Respondent,**

**v.**

**Angelo Fernando QUEVEDO, Defendant and Appellant.**

**No. 19049.**

Supreme Court of Utah.

March 26, 1987.

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

Lisa Remal, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Dave B. Thompson, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

STEWART, Associate Chief Justice:

On the evening of December 5, 1982, two robberies were committed within minutes of each other in a Salt Lake City neighborhood. A witness saw a vehicle leave the scene of one robbery and notified the police. From that description, a police officer spotted the vehicle. Several police vehicles chased the car to a dead-end alley where the car crashed. Three persons emerged, two of whom were apprehended and later convicted of the robberies. The third person, the driver, fled the scene and disappeared into a nearby apartment house. The officers immediately searched the apartment house and found Quevedo in a back room of an apartment, undressed and in bed with his girlfriend. At trial, she and another woman who was in the apartment testified that Quevedo had been there all evening.

Four police officers involved in the chase identified Quevedo as the third occupant of the car. The first, David Ward, testified that he viewed the moving car's occupants for about four seconds while he was driving past the car in the opposite direction. He also testified that at the same time he was talking on his radio and beginning to turn his car around.

The second officer, Ken Halterman, also testified that he viewed the driver of the car for four or five seconds while chasing one of the other suspects who was running in a direction different from the direction the driver was going. Halterman also tes-

tified that he recognized Quevedo because he had known Quevedo for about three years.

The third officer, Michael Fierro, testified that he chased the driver from the site where the car crashed to the door of the apartment house. He testified that he got within fifteen feet of the suspect before the suspect disappeared into the apartment house. Fierro was the officer who later found Quevedo undressed with his girlfriend in one of the apartments in the apartment house.

The fourth officer, Robert DeWitt, testified that he also chased the car's driver after the car crashed and got within twenty feet of the driver. He identified Quevedo as the person he chased and identified a jacket he said Quevedo was wearing during the chase and again when Quevedo left the apartment house in police custody.

The only other evidence tending to incriminate Quevedo was police testimony that one of the women in the apartment where Quevedo was arrested said, "I don't know what he done, he just ran in here." At trial, the woman to whom this statement was attributed denied making it. Furthermore, Joseph Vigil, who was convicted of committing the robberies involved in this case, testified that Quevedo was not the driver of the car.

Quevedo requested that the judge give a jury instruction modeled after that approved in *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir.1972), which dealt with some factors that often affect the reliability of eyewitness identification. The judge refused to give the instruction, and Quevedo objected.

In *State v. Long*, 721 P.2d 483 (Utah 1986), we held that in cases tried after the date of the *Long* opinion, eyewitness identification instructions are mandatory "whenever eyewitness identification is a central issue in a case and such an instruction is requested by the defense." *Id.* at 492.

This case was on direct appeal to this Court when the *Long* decision was announced. Therefore, although eyewitness identification is a central issue, and an eyewitness instruction was requested, this case is controlled by pre-*Long* standards. *Id.; State v. Jonas*, 725 P.2d 1378, 1380 (Utah 1986).

Prior to *Long*, the law was that it lay within a trial judge's discretion whether an eyewitness identification instruction of the sort requested in this case was given. *State v. Booker*, 709 P.2d 342, 346 (Utah 1985); *State v. Tucker*, 709 P.2d 313, 316 (Utah 1985); *State v. Bingham*, 684 P.2d 43, 45 (Utah 1984); *State v. Watson*, 684 P.2d 39, 40 (Utah 1984); *State v. Reedy*, 681 P.2d 1251, 1252 (Utah 1984); *State v. Newton*, 681 P.2d 833, 834 (Utah 1984); *State v. Malmrose*, 649 P.2d 56, 61 (Utah 1982); *State v. Shaffer*, 638 P.2d 1185, 1187 (Utah 1981). However, this Court also stated prior to *Long* that failure to give an eyewitness instruction might be an abuse of discretion where there were serious questions about the reliability of the eyewitness identification. *See, e.g., State v. Tucker*, 709 P.2d at 316; *State v. Reedy*, 681 P.2d at 1253–54.

Until we decided *Long*, we had not reversed a trial court's refusal to give such an instruction because we held it was not an abuse of discretion. *State v. Jonas*, 725 P.2d at 1380; *State v. Long*, 721 P.2d at 487.

Since *Long*, this Court has applied the pre-*Long* discretionary standards to a failure to give an eyewitness identification instruction and found an abuse of discretion. *State v. Jonas*, 725 P.2d 1378 (Utah 1986). Although there are some similarities, there are also differences between *Jonas* and this case. In both cases, it was dark when the events occurred, and the witnesses saw the suspects for only a few seconds. There are, however, two important differences. First, there were four eyewitnesses, one of whom had known the defendant for three years, rather than only one witness, as in *Jonas*. The one officer's prior acquaintance with Quevedo does much to fortify that officer's identification. Second, the identification of the jacket Quevedo wore when arrested as the jacket worn by the fleeing suspect is not so subject to error as the identification of a person.

The trial court, in our view, should have given a *Telfaire*-type instruction for the reasons stated in *State v. Long*. However, since *Long* was prospective only in holding that such an instruction must be given whenever eyewitness identification is a central issue, the pre-*Long* abuse-of-discretion standard applies. We hold that refusal to so instruct was not an abuse of discretion.

Affirmed.

WE CONCUR:

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Justice (concurring):

I concur that the trial court did not abuse its discretion in refusing to give a cautionary instruction under the facts of this case. In the future, in applying the rule of *State v. Long*, 721 P.2d 483 (Utah 1986), I believe that any cautionary instruction which is given should not be in the form of that approved in *United States v. Telfaire*, 469 F.2d 552 (D.C.Cir.1972), or in the form of that suggested by the majority in *State v. Long, supra*. See my dissenting opinion in *State v. Long* for the type of instruction I would give.