The STATE of Utah, Plaintiff and Respondent,

v.

John R. REMINGTON, Defendant and Appellant.

No. 860031.

Supreme Court of Utah.

March 31, 1987.

On Rehearing May 26, 1987.

David E. Littlefield, Khris Harrold, Salt Lake City, for defendant and appellant.

David L. Wilkinson, Atty. Gen., Dave B. Thompson, Asst. Atty. Gen., Salt Lake City, for plaintiff and respondent.

PER CURIAM:

Defendant John R. Remington appeals from convictions of aggravated robbery, a first degree felony, possession of a dangerous weapon by a restricted person, a second degree felony, and of being a habitual criminal. Before this Court, Remington claims error in the trial court's refusal to give a cautionary jury instruction concerning eyewitness identification and in the jury's conviction on insufficient evidence. We affirm.

On Saturday, August 17, 1985, between 2:00 and 2:30 p.m., Remington and a friend, John Kalisz, arrived at a used car lot at Eighth South and Main Streets in Salt Lake City, Utah. Remington asked the owner if he could test drive a black 1978 Monte Carlo around the block. He left the truck in which he had arrived behind on the lot. When he did not return by 5:00 p.m., the owner searched Remington's truck, found a Utah State Prison pass bearing Remington's picture, and contacted the prison and then the police. Officer Faraone arrived at the car lot at 5:30.

At 5:00 p.m., Remington entered Earth's Originals, a jewelry store at Brickyard Plaza, where Malinda Engelhardt, an employee, was talking to a friend. Remington placed himself in a corner, looked out the window, and asked Engelhardt what time it was and when the store closed, as he was bringing his wife in later. Remington then left in the direction of Cruser Jewelry. Engelhardt testified that Remington wore a light blue shirt, washed Levis, a baseball cap, and sunglasses. She did not notice what shoes he wore. Four days after the robbery, Engelhardt identified Remington from a photo spread as the man who had been in her store.

Reed Cruser, the seventy-eight-year-old owner of Cruser Jewelry, testified that the man who robbed him had been in his store around 2:00 p.m. that day and entered a second time around 5:20 p.m., displaying a gun and ordering Cruser to go to a back

room and lie face down before he swept into a large plastic sack jewelry and watches from drawers and the display case. Cruser's burglar alarm went off at 5:31 p.m.

At 5:46 p.m., Officer Faraone at the used car lot received word from dispatch that a robbery had taken place at the Brickyard Plaza and that the search centered on a black Monte Carlo getaway car which had spun out and hit the curb before leaving the Brickyard Plaza. Within minutes, Kalisz arrived at the used car lot in the Monte Carlo without Remington and was asked where Remington was. Kalisz reported that he had taken Remington to St. Mark's Hospital with an attack of appendicitis. A check with the hospital revealed that that statement was false. The Monte Carlo had a scuff mark on the side wall of the right rear tire. The price stickers had been removed and replaced, but no incriminating evidence was found inside the car. A back-up officer at the scene testified that Kalisz wore a light blue shirt and high boots, but could not recall whether he wore Levis or corduroy pants.

Cruser was brought to the used car lot to confront Kalisz. Cruser testified that when the robber entered his store, he wore a blue shirt, tan pants, and gym shoes. He stated that he did not get a good look at the robber's face because he could see only the tan pants and gym shoes after he lay down on the floor. At the car lot, Cruser thought Kalisz might be the man who robbed him, but noticed that he wore brand new boots instead of gym shoes and was dressed differently. Two or three days after the robbery, Cruser identified Remington from the same photo spread that was shown to Engelhardt for identification, but was unsure and confused at trial whether Remington was the robber. Remington and Kalisz were tried together, and some of the confusion may have been caused by the prosecution, who identified the two defendants by their respective counsel.

Remington returned to the prison late on the day of the robbery. He wore tan pants, gym shoes, and a white t-shirt, as well as a Bulova watch which bore a stamped "P3" and fresh glue from a removed price tag on the back. Cruser testified that he had recently returned to the display case an older-model Bulova watch that had been laid away and never picked up by a customer and that the "P3" on the back meant it was a 1983 model. Cruser stated that the watch was a commonly available watch that he carried in his store. The prison warden did not know whether Remington had worn the watch on the morning of the robbery when he left the prison on a work release.

In *State v. Long*, 721 P.2d 483, 492 (Utah 1986), we abandoned our theretofore discretionary approach to cautionary jury instructions and directed "that in cases tried from this date forward (June 20, 1986) trial courts shall give such an instruction whenever eyewitness identification is a central issue in a case and such an instruction is requested by the defense." In *Long*, the State's case hinged on uncorroborated eyewitness testimony of a single witness, the victim of the crime. In *State v. Jonas*, 725 P.2d 1378 (Utah 1986), this Court was again faced with a case in which the victim of the crime was the only eyewitness on whose uncorroborated testimony the jury had convicted the defendant without the aid of a cautionary instruction on eyewitness identification. We noted there, as we do here, that the holding in *Long* could not be applied retroactively to the case before us, as it was tried before our decision in *Long* was rendered. We then continued in *Jonas*:

> In each of our pre-*Long* cases involving the refusal of a trial court to give a cautionary instruction, we have held that the trial court did not abuse its discretion under the particular circumstances presented, although we did expressly recognize "that under suitable circumstances a cautionary instruction of the type requested would be required." *State v. Tucker*, 709 P.2d [313] at 316 [Utah 1985].

We then distinguished *State v. Jonas* as presenting a classic example of circumstances under which a cautionary instruction on reliability of eyewitnesses was necessary, reciting the particular facts of that case.

In contrast, the case before us today fits easily into the rubric of all those pre-*Long* cases that we cited in *Jonas*. Corroborating evidence of Remington's presence at the Brickyard Plaza around the time of the robbery came from Engelhardt, who positively identified him from a photo spread. There was other inculpating, albeit circumstantial, evidence that rendered the discrepancies in Cruser's testimony negligible when balanced against the demonstrable evidence, such as the scuff mark on the car and the items worn by Remington upon his late return to the prison. The sighting of the Monte Carlo at the Brickyard Plaza immediately after the robbery, the return of that car to the used car lot within a short time thereafter, the absence of Remington in the Monte Carlo and at the hospital, all constituted evidence from which the jury could have concluded that Remington was the man who had robbed Cruser. Under the circumstances, the trial court's refusal to give the jury Remington's requested cautionary instruction [1] may not be regarded as an abuse of discretion.

In light of what has just been said, our deferential review of the jury's verdict precludes us from substituting our judgment for that of the jury so long as there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime could be reasonably made. *State v. Booker*, 709 P.2d 342 (Utah 1985).

The convictions are affirmed.

STEWART, Associate C.J., concurs in the result.

---

1. We note the State's request that we not address Remington's claimed error with respect to the requested jury instruction as he failed to object to the trial court's refusal to give the instruction. We generally decline to review claimed error under those circumstances, *State v. Evans*, 668 P.2d 566 (Utah 1983), and notice failure to give an instruction without objection only when that failure would plainly result in a miscarriage of justice. *State v. Lesley*, 672 P.2d 79, 81 (Utah 1983). Though the trial court's failure in this case did not result in a miscarriage of justice, we have addressed the issue here only because of our intervening decision in *Long*.